```
                    United States District Court
                      District of Massachusetts

_____
                                 )
ORIX CAPITAL MARKETS, LLC IN ITS )
CAPACITY AS SPECIAL SERVICER AND )
ATTORNEY-IN-FACT FOR WELLS FARGO )
BANK, N.A. FORMERLY KNOWN AS     )    Civil Case No.
WELLS FARGO BANK MINNESOTA,      )    10-12019-NMG
N.A., AS TRUSTEES FOR REGISTERED )
HOLDERS OF SALOMON BROTHERS      )
MORTGAGE SECURITIES VII, INC.,   )
COMMERCIAL MORTGAGE PASS-THROUGH )
CERTIFICATE SERIES 2000 C-2,     )
         Plaintiff,              )
                                 )
         v.                      )
                                 )
CADLEROCKS CENTENNIAL DRIVE, LLC,)
DANIEL CADLE,                    )
         Defendants.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff ORIX Capital Markets ("ORIX") brings suit against defendants Cadlerocks Centennial Drive, LLC ("Cadlerocks" or "Borrower") and Daniel Cadle ("Cadle" or "Guarantor") for breach of a promissory note, a guaranty and an environmental indemnity agreement.

Currently before the Court is the plaintiff's motion for summary judgment with respect to Count II (breach of the Guaranty Agreement) and Count III (breach of the Environmental Indemnity

-1-

Agreement) of its Amended Complaint.

I. **Factual Background**

This case involves a dispute with respect to a 4.63 acre mixed-use commercial and industrial property located at One Centennial Drive, Peabody, Massachusetts ("the Property"). In December 1999, Cadlerocks borrowed $1,925,000 from Salomon Brothers Realty Corp. ("Original Lender") for which Cadlerocks executed a promissory note ("the Note") secured by a Mortgage on the property and an Assignment of Leases and Rents ("ALR"). Cadle also executed an Exceptions to Non-Recourse Guaranty Agreement ("Guaranty") and an Environmental Indemnity Agreement ("Environmental Indemnity"). The Guaranty renders Cadle personally liable for all amounts due on the Environmental Indemnity Agreement. The Mortgage, Note, ALR and all other loan documents were assigned by the Original Lender to Wells Fargo Bank, N.A. in August, 2000.

The Note reached maturity on January 1, 2010. As of that date the outstanding balance on the Note was $1,464,934. Cadlerocks did not pay the amount due and thus was in default. Cadlerocks continued to make monthly principal and interest payments of $24,889 on the Note until it ceased making payments entirely in August 2010.

Following default, ORIX noticed the foreclosure sale of the property. Cadlerocks offered to transfer the property to ORIX

through a deed-in-lieu of foreclosure.  ORIX declined, however, because of concerns about its own potential liability for taking title directly from Cadlerocks.  While conducting due diligence prior to the foreclosure sale, ORIX ordered a Phase I Environmental Site Assessment of the Property which identified the possible presence of hazardous materials.  ORIX then cancelled the foreclosure sale and sought appointment of a receiver which this Court approved.

Pursuant to the Mortgage and ALR, Cadlerocks is required, after default, to hold all rents and income from the Property in trust for ORIX as assignee of the Original Lender.  In September 2010, ORIX twice demanded that Cadlerocks turn over all post-default rents.  Cadlerocks failed to do so.  In December 2010, $42,506 was transferred from Cadlerocks' operating account to the IOLTA account of Cadle's counsel.  Cadle asserts that those funds were transferred to pay himself back for personal loans he had made to Cadlerocks in 2010 to cover loan payments and operating expenses.  Of these funds $9,068 was later transferred to the Receiver.

## II. **Procedural History**

ORIX filed its complaint on November 11, 2010.  The Court appointed Francis Morrisey as Receiver on December 15, 2010.  Defendants promptly answered the original complaint and then,

after plaintiff filed an Amended Complaint in August, 2011, answered that Complaint as well.

### III. Analysis

#### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the

entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.  Application**

**1. Breach of Guaranty Agreement (Count II)**

ORIX asserts that Cadle is personally liable under the Guaranty Agreement for 1) the income and profits received by Cadlerocks since it defaulted on the loan, 2) failure to maintain or repair the Property and 3) any indemnities under the Environmental Indemnity Agreement in connection with the presence of environmental hazards.

**a. Post Default Diversion of Rental Income**

ORIX claims that Cadle is personally liable for $33,438 as a result of Cadlerocks' improper post-default diversion of rental income that occurred when Cadlerocks transferred funds from its operating account to its counsel's IOLTA account. Cadle, responds that those funds were, however, transferred as repayment for personal loans he made to Cadlerocks to allow it to continue to make loan payments to ORIX and, because ORIX benefitted from

those proceeds, it should not be able to recover a second time from him.

Under Paragraph 30 of the Mortgage as applied to Cadle through the Guaranty, Cadle is personally liable for any

> income . . . received by or on behalf of [Cadlerocks] subsequent to the date on which the Lender gives written notice that a default has occurred under the Loan and not applied to the payment of principal or interest due under the Note or payment of operating expenses.

ORIX provided Cadlerocks with written notice of default on January 8, 2010. In December 2010, certain funds were transferred from Cadlerocks' operating account to its counsel's IOLTA account. Because that transaction involved income received after written notice of default that was not applied to the payment of principal or interest, the transfer plainly violates the language of the Mortgage. As a result, Cadle is personally liable for the balance of the misappropriated funds currently in counsel's possession.

### b.   **Maintenance of the Property**

Under the Mortgage, Cadlerocks (and Cadle by virtue of the Guaranty) agreed to "restore and repair" the Property "to the equivalent of its original condition." The meaning of this contract term is rendered ambiguous by the facts of this case. ORIX claims that "original condition" refers to the condition of the building in 1964 at the time it was built, rather than in 1999 when the Note was signed. Cadle responds that such an

interpretation would lead to the incongruous result that Cadlerocks was in breach the moment the Note was signed and would have required conversion of the Property to a single building as it was originally constructed, even though it was subsequently subdivided.

Despite its claim that the building had to be converted to its 1964 condition, ORIX also asserts that there is a need for immediate repairs to the Property in the amount of $523,875. Two months before the Property was put into receivership, however, an appraisal commissioned by ORIX determined that only $91,171 in immediate repairs were necessary. Prior to that, a separate appraisal commissioned by ORIX found the Property to be in "average condition" and "reasonably well maintained." A contemporaneous inspection "did not reveal any significant deferred maintenance." In fact, the Receiver's property manager, Genesis Management Group ("Genesis"), found that the roof, which ORIX now claims needs to be entirely replaced, was in "overall good shape." Genesis has not identified any of the immediate repairs ORIX claims are necessary as items it plans to address. Finally, despite ORIX's claim that the Property needs immediate and expensive repairs, ORIX has disavowed any claim that it is entitled to damages on those grounds. As a result, there is a genuine issue of material fact as to whether any repairs are needed and to what extent Cadle is liable for those repairs.

### 2.   **Breach of Environmental Indemnification Agreement (Count III)**

Plaintiff asserts that Cadlerocks is liable for costs and damages related to the presence of environmental conditions on the Property under the terms of the Environmental Indemnification Agreement.  Under the terms of the Guaranty, Cadle is personally liable for all amounts due under the Environmental Indemnification Agreement.

The Environmental Indemnification Agreement states, in relevant part, that the indemnitor will indemnify the Lender for costs arising from the "presence" or "suspected presence" of "Hazardous Materials...affecting the Property." However, there is a genuine issue of material fact as to whether there are any hazardous materials on the property.

In the Phase I Environmental Assessment conducted prior to the intended foreclosure, ORIX's own expert indicated that it

> did not identify evidence of significant leaks, spills, or the improper handling of petroleum or hazardous substances that might impact the environmental condition of the Subject Property.

As a result, the expert noted "[n]o concerns identified" with respect to "Hazardous Substances."  During the Phase II investigation, the presence of airborne tetrachroloethylene ("TCE") was identified inside the building on the Property.  ORIX asserts that TCE is a hazardous substance under the Massachusetts Contingency Plan ("MCP").  However, an environmental expert hired

-8-

by the Receiver "emphasized...that the property is not a [MCP] site, since no reportable conditions have been identified." ORIX's own expert also noted in its Limited Subsurface Investigation Report that "the soil gas concentrations may not represent release of oil or hazardous materials."

Even if there are hazardous materials present on the Property, there remains a genuine dispute as to whether ORIX could have mitigated all of its damages related to the investigation of the purported hazardous substances on the Property by relying on the Environmental Insurance Policy Cadlerocks purchased at the time the loan was closed.  As a result, summary judgment on this claim is unwarranted.

## ORDER

In accordance with the foregoing, plaintiff's motion for partial summary judgment is, with respect to liability for post default diversion of rental income, **ALLOWED**, but is, in all other respects, **DENIED.**

**So ordered.**

                                          /s/ Nathaniel M. Gorton
                                          Nathaniel M. Gorton
                                          United States District Judge

Dated October 18, 2012